**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-31038

BICKHAM LINCOLN-MERCURY INCORPORATED,

Plaintiff-Appellant,

VERSUS

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

February 26, 1999

Before DeMOSS, PARKER and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Bickham Lincoln-Mercury, Inc. (Bickham) was prosecuted for failure to file Form 8300 with the Internal Revenue Service following two transactions involving the receipt of more than $10,000. As part of a plea agreement, Bickham pleaded guilty and paid a $5,000 criminal fine and the government agreed that it would not initiate further prosecutions against Bickham. Approximately a year later, the government imposed a civil penalty of $27,000 based upon the same conduct which resulted in the criminal penalty. The issues on appeal are whether imposition of the civil penalty following the criminal fine violated the plea agreement and constituted double jeopardy under the Fifth Amendment.

**Factual and Procedural Background**

Bickham owned and operated a Lincoln-Mercury dealership in Lafayette, Louisiana. Section 6050I(f)(1)(A) of the Internal Revenue Code requires the submission of Form 8300 in connection

1

with a transaction involving the receipt of more than $10,000. Bickham engaged in two transactions which resulted in the receipt of approximately $40,580 but neither transaction was reported to the Internal Revenue Service (IRS) via Form 8300. Despite Bickham's failure to file Form 8300, the IRS identified the unreported transactions as part of an investigation targeting car dealerships to uncover Section 6050I violations. In March 1993, the government filed a bill of information charging Bickham with two counts of failure to file Form 8300. The evidence indicates that Bickham deliberately withheld this data from the IRS. For example, one purchaser approached Bickham after he was rebuffed by another dealership when he suggested that the salesman conceal the amount of cash paid for a particular car. After the purchaser recounted the incident to a Bickham employee, the employee contacted the other dealership and arranged to have the car transferred to Bickham's facility where the sale was completed without filing Form 8300.

The plea agreement in the criminal case provided that Bickham would plead guilty and pay a fine of $5,000. In return, the government would "not [] further prosecute defendant . . . for the willful failure to timely file a Form 8300." In September 1993, the district court allowed Bickham to change its plea to nolo contendere since an admission of guilt would result in the loss of the franchise. The plea of nolo contendere was subject to the same conditions as the guilty plea.

The IRS proposed a $27,000 civil penalty in December 1994 based upon Bickham's failure to file Form 8300. Bickham asked the district court to deny this request because a civil penalty would constitute a violation of the plea agreement and amount to double jeopardy. The district court denied Bickham's motion. Bickham paid the civil penalty and filed an administrative claim for a refund. When the refund claim was denied, Bickham initiated a refund suit. Both parties filed cross motions for summary judgment. The district court granted the government's motion for summary judgment in the refund suit and Bickham timely filed an appeal. We affirm the district court's decision.

## Standard of Review

A district court's determination of the terms of a plea agreement is a factual question which

is reviewed for clear error. *United States v. Clark*, 55 F.3d 9, 11 (1st Cir. 1995), *cert. denied*, 117 S. Ct. 272 (1996). In this circuit, deciding whether the government violated a plea agreement is a question of law subject to *de novo* review. *United States v. Aderholt*, 87 F.3d 740, 742 (5th Cir. 1996). The party asserting a breach of a plea agreement must prove the underlying facts establishing a breach by a preponderance of the evidence. *United States v. Hernandez*, 17 F.3d 78, 81 (5th Cir. 1994).

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir. 1995). Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Questions of fact are viewed in the light most favorable to the nonmovant while questions of law are reviewed *de novo*. *Id.*

## Discussion

In 1984, Congress passed Internal Revenue Code Section 6050I as part of the Deficit Reduction Act. *United States v. Gertner*, 873 F. Supp. 729, 731 (D. Mass.), *aff'd*, 65 F.3d 963 (1st Cir. 1995). Section 6050I(f)(1) requires a person engaged in a trade or business who receives more than $10,000 in cash to disclose the purchaser's name, address and tax identification number on Form 8300, along with the date and nature of the transaction. The purpose of the reporting requirement is to detect money laundering schemes. *Id.* According to Section 6050I(f)(2), a person who violates Section 6050I(f)(1) "shall be subject to the same civil and criminal sanctions applicable to a person which fails to file or completes a false or incorrect return under this section."

Section 7203 of the Internal Revenue Code outlines the criminal penalties for the willful failure to file Form 8300: a maximum fine of $100,000 for a corporation plus the costs of prosecution. 26 U.S.C. § 7203. In addition to criminal penalties, there are civil penalties for failure to file Form 8300. Withholding required information from the IRS because of an "intentional disregard of the filing requirement" can lead to a civil penalty which is the greater of either $25,000

or the amount of cash received in the unreported transaction. 26 U.S.C. § 6721(e)(2)(C). Based upon Section 6721, the IRS assessed a civil penalty of $27,000 against Bickham. Bickham argues that this civil penalty violated the plea agreement because it stated that Bickham would not be subject to "further prosecut[ion] . . . for the willful failure to timely file a Form 8300."

To assess whether a plea agreement has been violated, this court considers "'whether the government's conduct is consistent with the parties' reasonable understanding of the agreement.'" *United States v. Garcia-Bonilla*, 11 F.3d 45, 46 (5th Cir. 1993) (citation omitted). Plea agreements are contractual in nature and should be interpreted according to general principles of contract law. *Hentz v. Hargett*, 71 F.3d 1169, 1173 (5th Cir.), *cert. denied*, 116 S. Ct. 1858 (1996) (citation omitted). We begin our analysis with the language of the plea agreement. The plea agreement stated that Bickham would not be subject to further prosecution. Prosecution typically involves "proceed[ing] against a person criminally," Black's Law Dictionary 1221 (6th ed. 1990), since it is:

> part of the terminology of the criminal law, describing the means by which the law is to be enforced, and associated in popular thought with laws for the prevention and punishment of crime. In this sense, the word refers to a criminal action or proceeding, and 'prosecution' has been said to be synonymous with 'criminal action.'

22 C.J.S. *Criminal Law* § 5 (1989). On the other hand, an action represents a:

> proceeding[] of a civil nature, and in this sense, as opposed to 'prosecution,' it includes the modes allowed to individuals for enforcement of civil rights or redress of private wrongs, excluding proceedings instituted by the government for the punishment of offenses, and, accordingly, is inapplicable to a prosecution for crime.

1A C.J.S. *Actions* § 3b (1985).

Case law often distinguishes between criminal prosecutions and civil actions. *See Ragan v. Commissioner of Internal Revenue*, 135 F.3d 329, 337 (5th Cir.), *cert. denied*, 119 S. Ct. 176 (1998) (stating that case was part of complex situation involving several civil suits and a criminal prosecution); *Bodell v. Walbrook Ins.* Co., 119 F.3d 1411, 1420 (9th Cir. 1997) (commenting that unlike civil actions, only federal sovereign can bring criminal prosecutions); *United States v. Balsys*, 119 F.3d 122, 126 (2d Cir. 1997), *rev'd for other reasons*, 118 S. Ct. 2218 (1998) (stating that deportation proceeding is civil action and not criminal prosecution); *United States v. Bongiorno*, 106

4

F.3d 1027, 1034 (1st Cir. 1997) (noting Child Support Recovery Act contemplates criminal prosecutions not civil actions); *United States v. Thomas*, 709 F.2d 968, 972 (5th Cir. 1983) (noting higher standard of proof and greater procedural protection in criminal prosecution as opposed to civil action). Similar distinctions between criminal prosecutions and civil actions are found in statutory law. *See* 28 U.S.C. § 1442(a) which states that "a civil action or a criminal prosecution commenced in a State court . . . may be removed . . ." to federal court.

The district court was not clearly erroneous in determining that civil penalties were not prohibited by the plea agreement. The plea agreement refers to Section 7203, which imposes criminal liability on any person who wilfully fails to file returns, supply information or pay taxes. However, the plea agreement does not state that Bickham is immune from civil liability pursuant to Section 6721. In fact, there is no mention of civil liability in the plea agreement. Thus, it is reasonable to conclude that both parties understood civil liability was not encompassed by the plea agreement since they could have included specific language to this effect had they so desired. Given the agreement's silence regarding civil liability, we are hesitant to interpret it in a manner which would add terms that were not agreed upon by the parties. The lack of any discussion of civil liability, plus the fact that the word prosecute typically refers to criminal proceedings, leads us to conclude that civil liability was not prohibited by the plea agreement. Therefore, the assessment of a civil penalty did not violate the agreement.

The plea agreement also states that it provides no protection "from prosecution from perjury . . . false declarations or false statements . . . or obstruction of justice." Based upon this clause, Bickham argues that prosecution on any other grounds is prohibited, including the assessment of civil penalties. We disagree with Bickham's interpretation of this clause. The exceptions listed are all criminal acts and the agreement states that Bickham can be prosecuted as a result of these acts. Using the term prosecution in this context reiterates our finding that prosecution signifies a criminal proceeding. In addition, the issue of civil liability is not addressed by this clause. Given the use of the word prosecution in referring to three criminal acts and the fact that the clause does not mention

civil liability, we find that the government's assessment of a civil penalty did not violate the plea agreement.

Bickham's final argument is that the punitive nature of the civil penalty amounts to punishment in violation of the double jeopardy clause. The Fifth Amendment states that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb . . . ." Congress may impose both a criminal and a civil sanction for the same act without violating the double jeopardy clause. *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938). "Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction" and courts should consider whether the legislature intended to establish a civil penalty. *Hudson v. United States*, 118 S. Ct. 488, 493 (1997). While the intent of the legislature can be overridden if "the statutory scheme was so punitive either in purpose or effect" as to render it criminal despite Congress' intent to the contrary, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (citations and internal quotations omitted).

The Supreme Court has "long recognized that the Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could, in common parlance, be described as punishment." *Id.* (citations and internal quotations omitted). In fact, the double jeopardy clause "protects only against the imposition of multiple <u>criminal</u> punishments for the same offense . . . and then only when such occurs in successive proceedings . . . ." *Id.* (citations omitted) (emphasis added). Sanctions in a civil tax case are not considered criminal penalties. *Helvering*, 303 U.S. at 402.

The IRS calculated Bickham's civil penalty according to Section 6721. At the time Bickham committed its first offense for failure to file in October 1990, Section 6721(e) stated that the penalty was either ten percent of the aggregate amount of the items required to be reported or $2,000. When the second offense occurred in February 1991, the penalty under Section 6721(e) had increased to the greater of $25,000 or the amount of cash due to be reported, up to $100,000. Bickham was assessed $2,000 for its first offense and $25,000 for its second offense, bringing the total civil penalty

6

to $27,000.

This civil penalty is analogous to the fraud penalty at issue in *Helvering*. In *Helvering*, the Court reasoned that the civil fraud penalty served "primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Helvering*, 303 U.S. at 401. Section 6271 also permits the government to assess civil penalties to offset the cost of investigating persons who conceal income from the IRS. The government incurred at least $17,000 in investigative and prosecutorial expenses in bringing criminal proceedings against Bickham. As the district court noted, the government is entitled to rough remedial justice without being deemed to have imposed a second punishment. In addition, a remedy does not lose the quality of a civil action because more than the precise amount of actual damages is recovered. *United States ex. rel. Marcus v. Hess*, 317 U.S. 537, 550 (1943). Thus, the civil penalty of $27,000 was not so disproportionate that it transformed the civil penalty into a criminal sanction.

The government raises a separate issue for our consideration: whether the denial of Bickham's motion to enforce the plea agreement was a final judgment for collateral estoppel purposes. If the denial were a final judgment, Bickham cannot bring a second suit. *See Neal v. Cain*, 141 F.3d 207, 210 (5th Cir. 1998) (stating that when issue of ultimate fact has been determined by a final judgment, the issue cannot be litigated again between the two parties). Because we find that the plea agreement was not violated, we do not address the issue of whether Bickham's relitigation was barred by collateral estoppel.

## Conclusion

For the foregoing reasons, the district court's judgment is AFFIRMED.

7