Fabricant, J.
INTRODUCTION
This action arises from the plaintiff s failure to pay meals taxes, in violation of G.L.c. 62C, its criminal, prosecution for that conduct, and the Commissioner of Revenue’s subsequent assessment of interest and penalties against the plaintiff, pursuant to G.L.c. 62C, §§28, 32, and 33. In its complaint for declaratory judgment, the plaintiff alleges that the assessment of interest and penalties after criminal punishment violates its constitutional right to be free of double jeopardy. This matter is before the Court on the plaintiffs motion for summary judgment. The defendant opposes the plaintiffs motion and also has requested summary judgment in its favor. For the reasons that will be explained, the plaintiffs motion will be denied, and summary judgment will be entered for the defendant.
BACKGROUND
The following facts are undisputed. Plaintiff, Donuts of Swansea, Inc. (Donuts), filed meals tax returns from 1989 through 1992, stating that it had no taxable sales, and consequently owed no meals tax. In fact, Donuts had sales for that period resulting in total meals taxes owed of $65,286.09. In late 1992, the defendant Commissioner of Revenue contacted Donuts regarding the unpaid meals taxes. In early 1993, Donuts filed amended meals tax returns with the Commissioner, reflecting the actual amount of meals taxes owed to the Commonwealth. During 1993 and 1994, Donuts paid $64,250.85 of the $65,286.09 owed to the Commonwealth for the years 1989 through 1992.
On April 10, 1995, Donuts was indicted by a grand jury on two counts of violating G.L.c. 62C, §73, by willfully attempting to evade paying meals taxes and failing to account for, and pay, meals taxes to the Commonwealth. On June 7, 1996, Donuts entered *457 pleas of guilty on both counts. The court (Fremont-Smith, J.) accepted the plea and, based on an agreed recommendation, sentenced Donuts to pay a $40,000 fine on the tax evasion count. With Donuts’ consent, the Court placed the other count on file.
On September 14, 1996, the Commissioner sent Donuts a Notice of Assessment of $154,672.30. The Assessment included: $65,286.09, the amount of meals taxes owed, with credit for the $64,250.85 already paid; $37,831.17, in interest and penalties on the $65,286.09; an additional $65,286.09 as a double assessment pursuant to G.L.c. 62C, §28; interest of $50,676.12 on the §28 assessment, pursuant to G.L.c. 62C, §32; and $576.58 in penalties on the §28 assessment, pursuant to G.L.c. 62C, §33{a).
On December 2, 1996, Donuts commenced this action seeking a declaratory judgment that the assessment violated its rights under the Fifth Amendment to the United States Constitution. In addition, Donuts sought a preliminary and permanent injunction restraining the Commissioner from taking any action to collect the assessment.[1] On January 8, 1997, this court (Lopez, J.) issued a preliminary injunction, prohibiting the Commissioner from collecting the assessment.
DISCUSSION
Donuts moves for summary judgment on the ground that, as a matter of law, the tax assessment imposed under G.L.c. 62C, §§28, 32, and 33(a) amounts to double jeopardy in violation of the Fifth Amendment under the United States Constitution. The Commissioner opposes the motion, arguing that the imposition of penalties and interest does not constitute double jeopardy because it is a civil, not criminal, sanction.
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56 (c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). If the opposing party fails to respond by offering admissible evidence establishing the existence of a genuine dispute, or if the parties agree that only a question of law is involved, the case is properly resolved on summary judgment. See Cassesso at 422.
“The Double Jeopardy Clause provides that no ‘person [shall] be subject for the same offence to be twice put in jeopardy of life or limb.’ ” Hudson v. United States, 522 U.S. 93, 98 (1997). “The Clause protects only against the imposition of multiple criminal punishments for the same offense.” Id. at 99, citing Helvering v. Mitchell, 303 U.S. 391, 399 (1938) (emphasis in original). In this case, it is undisputed that the Commissioner’s assessment imposes on Donuts a penalty for conduct for which it has already received criminal punishment. The question is whether the second penalty is a second criminal punishment, so as to violate the Double Jeopardy Clause. See Hudson, 522 U.S. at 99.
To determine whether the assessment is civil or criminal, the Court must undertake a two-step inquiry. First, the Court examines “whether the legislature, ‘in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.’ ” Id., quoting United States v. Ward, 448 U.S. 242, 248, reh’g denied, 448 U.S. 916 (1980). Then, “[e]ven in those cases where the legislature ‘has indicated an intention to establish a civil penalty, [the court] inquire[s] further whether the statutory scheme was so punitive either in purpose or effect,’... as to ‘transform! ] what was clearly intended as a civil remedy into a criminal penalty.’ ” Hudson, 522 U.S. at 99, quoting Helvering, 303 U.S. at 248-49, and Rex Trailer Co. v. United States, 350 U.S. 148, 154 (1956). See Powers v. Commonwealth, 426 Mass. 534, 538-39 (1998).
The statutes invoked against Donuts indicate the legislature’s intent to establish both criminal and civil penalties. General Laws c. 62C, §73, under which Donuts was indicted and convicted, unequivocally establishes a crime. That section provides that a “person who willfully attempts ... to evade or defeat any tax imposed by this chapter . . . shall... be guilty of a felony and, . . . upon conviction thereof, shall be fined ... or by imprisonment. . . and shall be required to pay the costs of prosecution.” The provisions in issue here, however, sections 28, 32, and 33 of G.L.c. 62C, contain no references to any crime, and make no provision for any criminal process. Rather, these sections authorize action by an administrative official, the Commissioner of Revenue.[2] “[T]he fact that the authority to issue the penalties is conferred upon ... an administrative agency, ‘is prima facie evidence that [the legislature] intended to provide for . . . civil sanction[s].’ ” Grossfeld v. Commodity Futures Trading Comm’n, 137 F.3d 1300, 1303 (11th Cir. 1998), quoting Hudson, 522 U.S. at 103. Further, G.L.c. 62C, §1 defines “[t]ax” as “any tax, excise, interest, penalty or addition to tax imposed by this chapter ...” Assessments under the statutes in issue here clearly fall within that definition.
Despite this clear legislative intent, Donuts argues that the punitive effect of the assessment transforms it into a criminal sanction. Donuts relies on United States v. Halper, 490 U.S. 435 (1989), and Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767 (1993). The Halper Court stated that “under the Double Jeopardy Clause a defendant who already has been *458 punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.” 490 U.S. at 448-49. In Kurth Ranch, the Court held that a tax on illegal drugs after a criminal punishment for possession of the same drugs was “a second punishment within the contemplation of a constitutional protection that has ‘deep roots in our history and jurisprudence,’ . . . and therefore must be imposed during the first prosecution or not at all.” 511 U.S. at 784, quoting Halper, 490 U.S. at 440.
In granting Donuts’ request for preliminary injunction, this Court relied on Halper. Since then, however, the Supreme Court decided Hudson v. United States, 522 U.S. 93. In Hudson, the Court criticized the analysis used in Halper, stating that “[its] test for determining whether a particular sanction is ‘punitive,’ and thus subject to the strictures of the Double Jeopardy Clause, has proved unworkable.” Hudson, 522 U.S. at 102. The Hudson Court “disavow[ed]” the analysis used in Halper and “reaffirm[ed] the previously established rule” in Ward, 448 U.S. at 248-49. Id. at 96.
Hudson adopted several "useful guideposts” to determine whether a sanction intended by the legislature as civil, amounts to criminal punishment. These are: 1) “[w]hether the sanction involves an affirmative disability or restraint”; 2) “whether it has historically been regarded as a punishment”; 3) “whether it comes into play only on a finding of scienter”; 4) “whether its operation will promote the traditional aims of punishment, retribution and deterrence”; 5) “whether the behavior to which it applies is already a crime”; 6) “whether an alternative purpose to which it may rationally be connected is assignable for it”; and 7) “whether it appears excessive in relation to the alternative purpose assigned.” 522 U.S. at 99-100, quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963). “It is important to note, however, that. . . ‘only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.” Hudson, 522 U.S. at 100, quoting Ward, 448 U.S. at 249 (internal citation and quotation omitted). See Powers, 426 Mass. at 539, n.9.
Here, at least five of these seven guideposts, the first, second, third, sixth and seventh, favor the Commissioner, while the fourth and fifth are at best equivocal. The sanctions in issue “do not involve ‘an affirmative disability or restraint’ as that term is normally understood,” in that they do not include imprisonment or other deprivation of liberty. See Hudson, 522 U.S. at 104, quoting Flemming v. Nestor, 363 U.S. 603, 617 (1960). Similarly, monetary penalties such as these have not been historically viewed as punishment. “[T]he payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforceable by civil proceedings since the original revenue law of 1789.” See Hudson, 522 U.S. at 104, quoting Helvering, 303 U.S. at 400.
Applying the third factor, sanctions under these statutory provisions do not require “scienter,” but may be imposed “without regard to the violator’s state of mind.” Hudson, 522 U.S. at 104. See G.L.c. 62C, §28 (imposing fines on a taxpayer who “has failed to file a return or has filed an incorrect or insufficient return” and “refuses or neglects” after notice “to file a proper return” as well as on one who has done so “with a willful attempt in any manner to defeat or evade the tax . . .”); G.L.c. 62C, §32 (adding interest “[i]f any amount of tax is not paid ... on or before its statutory due date”); G.L.c. 62C, §33(a) (adding penalty “as an additional tax” if return not filed on or before due date; Commissioner may waive or abate penalty in whole or in part when “any failure to file a return or to pay a tax in a timely manner is due to reasonable cause and not due to willful neglect”).
Penalties under these statutory provisions obviously do serve one of the traditional aims of punishment, in that they deter the crime of tax evasion. As the Supreme Court recognized in Hudson, however,, “all civil penalties have some deterrent effect.” 522 U.S. at 102. “[T]he mere presence of this purpose is insufficient to render a sanction criminal, as deterrence ‘may serve civil as well as criminal goals’... To hold that the mere presence of a deterrent purpose renders such sanctions ‘criminal’ for double jeopardy purposes would severely undermine the Government’s ability to engage in effective regulation ...” Hudson, 522 U.S. at 105, quoting United States v. Ursery, 518 U.S. 267, 292 (1996). As in Hudson, the deterrent effect present here is incidental to the statute’s non-punitive purpose, in this case to promote the efficient administration of state taxation.
The conduct for which penalties pursuant to sections 28, 32 and 33(a) may be imposed may also constitute a crime, pursuant to G.L.c. 62C, §73 (a), as the plaintiffs conduct did in this case. It is worth noting, however, the fundamental difference between the statutory penalty in issue here and that in Kurth Ranch, 511 U.S. 767. In that case, the exaction, although labeled a tax, applied solely to conduct that was itself prohibited: the possession of contraband. Thus, while its collection might have incidentally generated revenue, its purpose and principal effect was indisputably to deter and punish criminal conduct unrelated to taxation. The statutory provisions here, in contrast, are part of a generally applicable scheme of tax collection, the overall purpose and effect of which is indisputably to generate revenue.
The statutory provisions in issue serve the noncriminal purpose of increasing the efficiency of state tax administration. The overall goal of the bill enacting these provisions, St. 1976, c. 415, §22, is evident in its title, “An Act Relative to the Administration of State *459 Taxation.” Acts and Resolves Passed by the General Court of Massachusetts 532 (1976). In a message declaring the act emergency legislation, to take immediate effect, the Governor expressed the view that it was necessary to “the immediate preservation of the public convenience,” in that it would “provide for the immediate administration of state taxation.” Id. at 599. The challenged sanctions are rationally related to this nonpunitive purpose, as they provide an effective incentive for taxpayers to pay their taxes in a timely manner. See Grossfeld, 137 F.3d at 1303.
Donuts relies heavily on the seventh factor, arguing that since it had paid $64,250.85 of the $65,286.09 actually owed prior to the assessment and paid a $40,000 fine, and that since the cost associated with the Commissioner’s investigation was negligible, the assessment of $154,672.30 is excessive in relation to the amount owed. This approach ignores the directive in Hudson that “we look only to ‘the statute on its face’ to determine whether a penalty is criminal in nature.” Hudson, 522 U.S. at 104, quoting Kennedy, 372 U.S. at 169. The question, then, is not whether the amount is excessive as applied to the particular facts of this taxpayer’s situation, but whether the amount authorized by the statutehere double the tax dueis by its nature excessive. Clearly it is not. “[A] remedy does not lose the quality of a civil action because more than the precise amount of actual damages is recovered.” Bickham Lincoln-Mercury Inc. v. United States, 168 F.3d 790, 795 (5th Cir. 1999) (affirming the assessment of $27,000 penalty for the failure to report $40,580 in income after plaintiff pled guilty and paid $5,000 fine); see Louis v. Comm’r of Internal Revenue, 170 F.3d 1232, 1235 (9th Cir. 1999) (addition to tax for fraud achieves “rough justice” despite fluctuation with changes in tax rates); United States v. Lippert, 148 F.3d 974, 977 (8th Cir. 1998) (penalty of “twice the amount of each kickback” not criminal); Grossfeld, 137 F.3d 1300, 1303 (sanction of “triple the monetary gain” not criminal).
Here, as in Hudson, “there is simply very little showing, to say nothing of the ‘clearest proof,’ ” as would be necessary to transform the civil sanction imposed into criminal punishment. 522 U.S. at 106. Accordingly, the Commissioner is entitled to judgment as a matter of law.
CONCLUSION AND ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiff s Motion for Summary
Judgment is DENIED and that summary judgment enter for the Defendant.

On December 3, 1996, Donuts filed with the Commissioner an application for abatement of the assessment on the same grounds. The Commissioner denied the application on February 4, 1998. Donuts did not appeal the Commissioner’s denial of the abatement to the Appellate Tax Board. At the summary judgment hearing, the Commissioner withdrew his previously raised defense of failure to exhaust administrative remedies.

General Laws c. 62C, §28, provides that “the commissioner may determine the tax due." General Laws c. 62C, §32(b), states that “penalties assessed under section twenty-eight shall include interest as provided in paragraph (a) ...” General Laws c. 62C, §32(a) provides that interest will be calculated at the rate of the Federal short-term rate . . ." General Laws c. 62C, §33(a) provides "[i]f any return is not filed with the commissioner on or before its due date or within any extension of time granted by him, there shall be added to and become a part of the tax, as an additional tax, a penalty of one percent of the amount required to be shown as the tax on such return for each month or fraction thereof...” Further, section 33(f) states that “[i]f it is shown that any failure to file a return or to pay a tax in a timely manner is due to reasonable cause and not due to willful neglect, any penalty or addition to tax under this section may be waived by the commissioner, or if such penalty or addition to tax has been assessed, it may be abated by the commissioner, in whole or in part.”